[S. F. No. 8905. In Bank.—March 30, 1920.]

ERNEST C. SMITTON, Appellant, v. VIRGINIA Mc-
CULLOUGH, as Executrix, etc., et al., Respondents;
DELLA E. FABER, Intervener and Respondent.

[1] EQUITABLE LIENS—DETERMINATION OF PRIORITY.—Where successive
conflicting interests, purely equitable in nature, are in all other
respects equal, the equity prior in time prevails, but if such
equality does not exist, the time of creation is the last element
for consideration in determining priorities.

[2] ID.—FORM OR MODE OF CREATION OF LIEN—IMMATERIALITY IN DE-
TERMINING PRIORITY.—If equitable interests in a subject matter
have been created, no inequality will arise based upon their form
or mode of creation, and the mere fact that an equitable lien was
created by parol agreement will not render it inferior to an in-
terest created by an assignment in writing.

[3] ASSIGNMENT—FUNDS IN HANDS OF THIRD PARTY—NOTICE.—Where
a person entitled thereto assigns a fund in the hands of a third
person, notice either oral or written to the holder of the fund is
necessary to render the assignment valid and effectual as against
subsequent assignees without notice and for a valuable considera-
tion.

[4] ID.—NECESSITY OF ACTUAL OR POTENTIAL EXISTENCE OF FUND.—
There must be a specific fund, actually existing or to come into
existence upon which the assignment may operate, but the fund
need not be actually in being if it exists potentially—that is, if
it will in due course of things arise from a contract or arrange-
ment already made or entered into when the assignment is made.

[5] ID.—PLEDGE OF CORPORATION STOCK—OPTION TO PURCHASE—EX-
CESS FUND ARISING FROM SALE—POTENTIAL EXISTENCE.—Where
the pledgor of corporation stock was given the option to require
its purchase by the pledgee at any time prior to the maturity of
the debt for a specified price, which was in excess of the debt,
the excess was subject to assignment by the pledgor prior to the
exercise of the option, since the fund had a potential existence
at the time of the assignment.

[6] ID.—TRANSFER OF STOCK TO PLEDGEE—SUBSEQUENT ASSIGNMENT—
NOTICE TO PLEDGEE AND NOT CORPORATION REQUIRED.—Where the
pledgee of corporation stock pursuant to the written authorization
of the pledgor caused the stock to be transferred to him as
pledgee on the corporation's books, notice of subsequent assign-

3. Priorities between assignees, notes, 71 Am. St. Rep. 31; 66
L. R. A. 761; 66 L. R. A. 774.

ment of the stock by the pledgor need not be given to the corporation, since notice under such circumstances should be given to the pledgee.

[7] ID.—PRIORITY OF LIENS—NOTICE.—An equitable lien on pledged corporation stock created under an oral agreement of the pledgor to make an assignment as security for the payment of a note is inferior to the lien created under a subsequent written assignment of the stock, where the subsequent assignee had no notice of the prior lien and was the first to give notice to the pledgee of her assignment, notwithstanding it was given as security for a pre-existing debt.

[8] TRANSFER — ANTECEDENT DEBT — VALUABLE CONSIDERATION. — An antecedent indebtedness not only constitutes a valuable consideration for a transfer in satisfaction and discharge of the indebtedness, but is also a valuable consideration within the protection of the equitable doctrine of bona fide purchase, for a transfer merely as security for a pre-existing debt.

[9] ID.—SECURITY FOR PRE-EXISTING DEBT—TRANSFER FOR VALUE.—A transfer as security for a pre-existing debt is a transfer for value not only as between the parties, but as to third persons.

[10] SECRET LIENS—POLICY OF LAW.—The policy of the law is against upholding secret liens and charges to the injury of innocent subsequent purchasers and encumbrancers.

APPEAL from a judgment of the Superior Court of Alameda County. W. M. Conley, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

John Ralph Wilson for Appellant.

David Cosgrave for Intervener and Respondent.

Fabius M. Clarke and Tirey L. Ford, Amici Curiae.

LENNON, J.—The plaintiff in this action sued to establish an equitable lien on certain personal property, alleged to have been created pursuant to the provisions of a parol agreement of the parties thereto, and to have the same declared to be prior and paramount to other liens which had been imposed upon the same personal property. Briefly

---

7. Pledgee of corporate stock as security for an antecedent debt as a bona fide purchaser within the rule which protects such purchasers against the equities of third persons, note, 9 A. L. R. 1619.

stated, the undisputed facts of the case as revealed by the pleadings and proof are these: In the month of September, 1916, one McCullough was indebted, for money loaned, to Smitton, the plaintiff, in the sum of $20,125. During said month of September, 1916, Smitton threatened McCullough with suit upon said indebtedness and subsequently agreed with McCullough not to sue, the consideration for Smitton's agreement to forbear to sue on the original indebtedness being McCullough's execution of a promissory note to Smitton, dated September 13, 1916, in the sum of $20,125, and McCullough's promise to give Smitton a lien on twenty-eight thousand five hundred shares of certain specified corporate capital stock as security for the payment of the note. For the purpose of perfecting said promised lien, McCullough, at the time of the execution of the note and the promise to give the lien, further agreed orally to forthwith transfer by assignment to Smitton twenty thousand shares of the said stock and hold in trust for Smitton the remaining eight thousand five hundred shares of said stock and, as trustee for plaintiff, to sell said remaining shares and apply the proceeds to the satisfaction and discharge of an existing lien in the sum of $8,250, which had been previously imposed upon all of McCullough's shares of said capital stock. McCullough died without transferring to the plaintiff any of said shares of said capital stock and never, by the sale of any portion thereof or otherwise, satisfied and discharged in whole or in part the pre-existing lien. Just before his death, on May 27, 1917, McCullough executed a written assignment of his interest in all of the said shares of stock to Della E. Faber by way of pledge to secure the payment of an antecedent indebtedness evidenced by a promissory note dated January 27, 1917, and executed to her by McCullough in the sum of $3,850. Della E. Faber intervened in this action, pleading her claim of lien and praying that it be decreed to be a lien on said shares of stock prior and paramount to any and all other claims or liens thereon save that of defendant Phillips. It appears beyond dispute that defendant Phillips came into and held possession of twenty-five thousand shares of said stock as pledgee pursuant to the provisions of a perfected pledge which was executed as security for and simultaneously with the execution of a promissory note to Phillips in the sum

of fifteen thousand dollars. As a part of the same transaction, and for the purpose of consummating the pledge, McCullough delivered to Phillips two certificates of the stock in question representing an aggregate of twenty-five thousand shares of said stock, which then stood in the name of McCullough, unencumbered, on the corporation's books, and at the same time, and as a part of the same transaction, McCullough by an instrument in writing authorized and empowered Phillips to cause said stock to be transferred to him as pledgee on the corporation's books. Accordingly, and thereafter, there was issued to Phillips, in his name as pledgee, a stock certificate representing twenty-five thousand shares of said stock and the same was thereupon delivered into the possession of Phillips and all the while thereafter stood in his name on the books of the corporation. Coupled and executed simultaneously with the contract of pledge, McCullough gave in writing to Phillips an option to purchase the said twenty-five thousand shares of stock at any time prior to the maturity of the promissory note for fifteen thousand dollars, which was the basis and consideration of the pledge, at the specified price of twenty-five thousand dollars, and, by the same agreement, McCullough was given an option to require the purchase by Phillips of the said stock at the same price. The latter option, the evidence shows, was subsequent to the death of McCullough exercised by the defendant Virginia McCullough, as executrix, and Phillips accordingly purchased said stock at the price stipulated, which was ten thousand dollars in excess of the sum due and owing to Phillips. It is an admitted fact in the case that the lien of said defendant Phillips is superior to the claims of the plaintiff, Smitton, and the intervener, Faber. The defendant, Virginia McCullough, has no personal interest in the subject matter of the litigation, and evidently was made a party to the action merely because of the fact that she, as executrix of the estate of McCullough, rejected the plaintiff's claim based upon the promissory note of the deceased which had been presented against the estate of the deceased. The trial court rendered and entered its judgment, based upon appropriate findings, establishing three liens upon the shares of stock in question in favor of (1) the defendant Phillips, (2) the intervener Faber, (3) the plaintiff Smitton, giving

preference by way of priority in the execution and satis-faction of each lien in the order stated. The plaintiff alone appeals, and only from that portion of the judgment which declares that the plaintiff's lien "is inferior and subordi-nate to the lien of said intervener," and which further de-clares "that the proceeds of said shares of capital stock be applied to a discharge of said respective liens in accordance with and as ranked by the terms of the judgment." The record shows, and counsel for plaintiff concedes, that but a single question is involved in the appeal and that "the question is simply one of priority."

Admittedly the claims of lien in question were not per-fected in accordance with the formalities required for the creation of statutory liens, but, apparently by the applica-tion of the doctrine of equitable liens, the trial court found that the claims in question had ripened into subsisting securities. This, of course, must have been upon the theory that every express executory agreement which contains a promise, or sufficiently indicated intention, to make some definitely described or identified property security for a debt or other obligation will be regarded in equity as creat-ing an enforceable charge upon and against the specified property. (3 Pomeroy's Equity Jurisprudence, 4th ed., secs. 1233–1235.) Assuming, as we must upon the record before us, but not deciding, that both claims are entitled to enforcement as equitable liens, plaintiff's claim of lien is subordinate and inferior to that of intervener Faber.

The fact that plaintiff's lien is prior in point of time is not, under the circumstances of this case, decisive of the question of priority. [1] True, where successive conflict-ing interests, purely equitable in nature, are in all other re-spects equal, the equity prior in time prevails. (Civ. Code, sec. 2897.) The time of creation, however, is the last ele-ment for consideration when determining the priority of equitable claims, and plaintiff's claim can predominate by reason of antedating intervener's equity only if the two in-terests are *in all other respects equal.*

Interests are equal in equity when each is entitled to the same recognition and protection by reason of possessing to an equal degree those elements of right and justice which are recognized and aided by courts of equity. [2] Since equity regards substance rather than form, if equitable in-

terests in a subject matter have been created, no inequality will arise based upon their form or mode of creation and, therefore, in the present case, if, as the trial court found, plaintiff has an equitable lien upon the subject matter thereof, the mere fact that it was created by a parol agreement will not render it inferior to an interest created in favor of the intervener by an assignment in writing. Nor does the fact that the intervener acquired a subsequent interest without notice of the plaintiff's prior claim in and of itself give the intervener any right to preference. (2 Pomeroy's Equity Jurisprudence, 4th ed., secs. 683, 684.) **[3]** Where, however, a person entitled thereto assigns a fund in the hands of a third person, the rule is established in this state that notice to the holder of the fund is necessary to render the assignment valid and effectual as against subsequent assignees without notice and for a valuable consideration. (*Graham Paper Co.* v. *Pembroke,* 124 Cal. 117, [71 Am. St. Rep. 26, 44 L. R. A. 632, 56 Pac. 627]; *Widenmann* v. *Weniger,* 164 Cal. 667, [130 Pac. 421]; 2 Pomeroy's Equity Jurisprudence, 4th ed., sec. 695.) Such notice may be either written or oral. (2 Pomeroy's Equity Jurisprudence, 4th ed., sec. 696.)

**[4]** Of course, there must be a specific fund, actually existing or to come into existence in the future, upon which the assignment may operate, but, "the fund need not be actually in being if it exists potentially— . . . if it will in due course of things arise from a contract or arrangement already made or entered into" when the assignment is made. (3 Pomeroy's Equity Jurisprudence, 4th ed., secs. 1280, 1283.) Defendant Phillips held the stock in question subject to certain options, previously noted, and the option to require the purchase of the stock by said defendant Phillips was exercised and consummated in due course in keeping with the purport of the pledge agreement. **[5]** Clearly, the fund resulting from this purchase had a potential existence at the time of the assignment by McCullough to plaintiff and intervener and, therefore, defendant Phillips was not a mere bailee, but the holder of a "fund" within the meaning of the above rule. **[6]** Under the facts of this case notice to the corporation was unnecessary. By virtue of section 324 of the Civil Code, when certificates of stock are transferred, the name of the transferee must be

entered upon the books of the corporation to render the transfer valid as to subsequent purchasers without notice. (*National Bank of Pacific* v. *Western Pac. Ry. Co.*, 157 Cal. 573, 580, [21 Ann. Cas. 139, 27 L. R. A. (N. S.) 987, 108 Pac. 676].) This requirement was fulfilled by defendant Phillips. No certificates of stock were ever transferred to either plaintiff or intervener, both being, at most, claimants of purely equitable liens. The corporation was responsible to Phillips, the pledgee, nor could plaintiff or intervener have secured any right against the corporation by notice to the corporation or thereby have prevented Phillips from becoming the owner of the stock in accordance with his agreement with McCullough. While ordinarily notice of the assignment of shares of stock must be given to the corporation (2 Pomeroy's Equity Jurisprudence, 4th ed., sec. 696), we can see no reason for requiring notice to the corporation under the facts of this case, which involves merely the rights, as between themselves, of two assignees of equitable interests, for the assignments in question were not simple assignments of direct interests in shares of stock, but were assignments of interests subject to the peculiar rights of an intervening third party. The rights of this third party were of such a nature that he, and not the corporation, was the direct holder of the fund upon which the assignment operated and notice to the corporation would have served no purpose. Notice to be effectual must be given to the person responsible to the assignor (*Stephens* v. *Green* [1895], 2 Ch. 148), and in this case the defendant Phillips was that person. The evidence shows that he, as the holder of the fund, had notice of intervener's claim and does not show any notice to him of plaintiff's claim of lien. [7] The preference, therefore, which the priority of creation might otherwise have given plaintiff's claim of lien is overcome by the fact that the intervener, even though a subsequent assignee, was the first to assert her right to possession, as far as was within her power, by giving notice to Phillips, the holder of the stock, of the assignment to her of McCullough's interest therein. The efficacy of this notice for the purpose of perfecting a priority of claim is, of course, dependent upon whether or not the intervener was an assignee for a valuable consideration without notice

of the prior equities of the plaintiff.  (*Dearle* v. *Hall*, 3
Russ. 1, 38 Eng. Reprint, 475.)

It is conceded that neither plaintiff nor intervener had,
prior to McCullough's death, any notice of each other's
claim of lien, but appellant contends that, since the assign-
ment to intervener was made and executed merely by way
of security for a pre-existing debt, intervener cannot claim
the benefit of the above-mentioned equity, for the reason, it
is urged, that, while an antecedent debt may be valuable as
a consideration between the parties, it is not a valuable con-
sideration within the meaning of the equitable rule afford-
ing protection to *bona fide* purchasers and encumbrancers
for value.    (*The Elmbank*, 72 Fed. 610; *Citizens' etc. Bank*
v. *Judy*, 146 Ind. 330, [43 N. E. 259].)    Whatever may be
the rule in other jurisdictions, that is not the rule in Cali-
fornia.   [8]   The law in this state on this question is well
settled to the effect that not only does an antecedent in-
debtedness constitute a valuable consideration for a transfer
in satisfaction and discharge of said indebtedness, but it is
also a valuable consideration, within the protection of the
equitable doctrine of *bona fide* purchase, for a transfer
merely as security for a pre-existing debt.    (2 Pomeroy's
Equity Jurisprudence, 4th ed., sec. 749.)   The earliest cases
in this state held that an antecedent indebtedness was a
valuable consideration to support the transfer of commercial
paper as security and rendered the pledgee thereof free from
equities between the original parties.    (*Payne* v. *Bensley*,
8 Cal. 260, [68 Am. Dec. 318]; *Robinson* v. *Smith*, 14 Cal.
94; *Naglee* v. *Lyman*, 14 Cal. 450; Jones' Pledges and Col-
lateral Securities, 2d ed., sec. 128; Pomeroy's Equity Juris-
prudence, 4th ed., secs. 480, 749.)   While these cases dealt
with a *bona fide* purchaser under the law-merchant, the rea-
soning there adopted for holding the antecedent debt a
valuable consideration was not based upon the peculiar re-
quirements of commerce and mercantile business, and, in
*Frey* v. *Clifford*, 44 Cal. 335, 342, the general rule was
definitely laid down, and has never since been receded from in
this state, ''that a mortgagee, in a mortgage given for the
security of a pre-existing debt, is to be regarded in this state
as a purchaser for a valuable consideration,'' and a subsequent
mortgage given in security for an antecedent debt was held to
prevail over a prior unrecorded transfer. · In *Fowles* v. *Na-*

*tional Bank of California,* 167 Cal. 653, [140 Pac. 271], after reviewing the authorities in this state, the court held that a pledgee of shares of stock which had been transferred as security for a pre-existing indebtedness was a pledgee for value, and as such had rights superior to the owner of the shares who had intrusted them to the pledgor. [9] The rule that a transfer as security for a pre-existing debt is a transfer for value not only as between the parties but as to third persons as well is too well settled in this state to be questioned.

[10] The policy of the law is against upholding secret liens and charges to the injury of innocent subsequent purchasers and encumbrancers. (*Palmer* v. *Howard,* 72 Cal. 293, [1 Am. St. Rep. 60, 13 Pac. 858]; *Ruggles* v. *Cannedy,* 127 Cal. 290, 297, [46 L. R. A. 371, 53 Pac. 911, 59 Pac. 827]; *Ferguson* v. *Murphy,* 117 Cal. 134, [48 Pac. 1018].) The intervener having given notice to the holder of the fund must, under the decisions in this state, be held, as against plaintiff, a *bona fide* encumbrancer for value, and the trial court therefore did not err in holding plaintiff's claim of lien inferior to that of intervener.

The judgment is affirmed.

Angellotti, C. J., Shaw, J., Kerrigan, J., *pro tem.,* Wilbur, J., Lawlor, J., and Olney, J., concurred.

Rehearing denied.

All the Justices concurred, except Shaw, J., and Wilbur, J., who were absent.