[Civ. No. 3368.  First Appellate District, Division Two.—May 20, 1920.]

SECURITY MORTGAGE COMPANY (a Corporation), Respondent, v. JOHN DELFS et al., Defendants; CONTINENTAL NATIONAL BANK OF LOS ANGELES (a Corporation), Cross-complainant and Appellant.

[1] MORTGAGES—ACTION TO FORECLOSE—DELIVERY OF NOTE AND MORTGAGE BY ASSIGNEE TO PAYEE—CONFLICTING EVIDENCE — FINDING — APPEAL.—In an action to foreclose a mortgage, a finding of the trial court that after the payee of the note had executed an assignment of the note and mortgage on a separate paper, the assignee under such assignment voluntarily redelivered the note and mortgage to the payee, if based upon conflicting evidence, is conclusive on the appellate court.

[2] ID.—FRAUD — NEGLIGENCE — INJURY TO TWO INNOCENT PARTIES — WHO MUST SUFFER—EQUITY.—As between two innocent parties who have both suffered from the fraud of a third the loss must fall where the course of business has placed it, if no fault or negligence is imputable to either party; but where the fault or negligence of either has furnished the means whereby the third party has perpetrated the fraud and occasioned the loss, equity demands that the loss must be borne by the one who by his conduct has rendered the injury possible.

[3] ID.—REDELIVERY OF NOTE AND MORTGAGE BY ASSIGNEE TO PAYEE—SUBSEQUENT ASSIGNMENT TO ANOTHER FOR VALUE—WANT OF NOTICE—ESTOPPEL.—Where, after a note and mortgage are assigned on a separate paper by the payee to a bank as security for the payment of an independent debt, the bank voluntarily delivers the note and mortgage to the payee thereof without any notation thereon showing its claim, and without recording the assignment to it or giving notice to the mortgagors of such assignment, and thereafter the payee assigns the note and mortgage to another, who takes the same prior to the recordation of the assignment to the bank, in good faith, for value, and without any notice of any prior claim, the bank is estopped from claiming ownership as against such subsequent assignee.

[4] ID.—ORDER OF RECORDATION OF ASSIGNMENTS IMMATERIAL—CONSTRUCTION OF CODE.—In such case, the equities of the respective assignees are not rendered equal because the subsequent assignee does not record his assignment until after the holder of the first assignment has recorded his, where the latter is not injured by the failure to record such subsequent assignment; neither is such subsequent assignment void under section 1214 of the Civil Code, as

against the assignee under the prior assignment, who places his assignment of record first, as the latter is not a "subsequent purchaser" within the meaning of that section.

[5] Id.—Assignment to Two Innocent Parties—Priority of Transfer and Recordation—Negligence—Fraud—Rights of Parties. When a mortgage on realty is fraudulently transferred to two innocent assignees under separate assignments prior to recordation or other notice of either assignment, as between the two innocent parties the priority of the transfer and of the recordation or other notice is important only when the equities are equal; but where the assignee second in point of time takes without notice and for a valuable consideration through the negligence of the other and the equities are otherwise equal, he by whose negligence the fraud occurred must be the sufferer.

APPEAL from a judgment of the Superior Court of Los Angeles County. John W. Shenk, Judge. Affirmed.

The facts are stated in the opinion of the court.

Kemp, Mitchell & Silberberg for Appellant.

Swanwick & Donnelly, S. E. Vermilyea and J. W. Swanwick for Respondent.

NOURSE, J.—Defendant and cross-complainant appeals from a judgment in favor of plaintiff foreclosing a mortgage executed by the defendants John and Rosa Delfs to one Gore, in February, 1917, and assigned by him to appellant in March, 1917, and thereafter on July 26, 1917, assigned by Gore to respondent. The facts material to the case are that, after the execution and delivery of the note and mortgage, Gore, the payee thereof, assigned both on a separate paper to appellant as security for the payment of an independent debt due from Gore to appellant; that thereafter and on July 18, 1917, appellant, acting through its regularly employed note teller, delivered the note and mortgage to Gore, taking his receipt therefor; that on July 26, 1917, Gore assigned the note and mortgage to respondent as security for the payment of ten thousand dollars borrowed by him from respondent at that time; that thereafter and on the twenty-first day of September, 1917, appellant duly recorded its assignment of March, 1917, and four days later respondent's assignment of July 26th was recorded. The

action was commenced by respondent to foreclose the mortgage so assigned to it and appellant intervened, claiming to be the owner of the note and mortgage as a prior assignee.

The trial court found that respondent was the owner of the note and mortgage at the time of the trial, that appellant was estopped from claiming ownership, and that the note and mortgage had been voluntarily delivered to Gore by appellant. These findings are attacked by appellant— the first two as being insufficient to support the judgment, the last as not being supported by the evidence.

[1] First giving consideration to the attack upon the finding of voluntary delivery of the note and mortgage, it appears that the evidence was conflicting, a portion of it having been given by deposition and this being contradicted by appellant's witnesses during the course of the trial. The evidence was that the documents were voluntarily delivered to Gore by the regularly employed note teller of the bank, who took Gore's receipt upon a printed form of receipt for collateral furnished him by the bank for the purpose. The teller testified that he had been specially authorized by the bank president to so deliver collateral to Gore whenever he wanted it and that it was a customary and frequent thing to do if the particular form of receipt was signed. The only conflict in the evidence as to this point was in the testimony of one of the witnesses for appellant to the effect that the authority given the note teller was restricted so that he should not permit Gore to take the documents away from the bank premises. Upon such conflict this court is bound by the finding of the trial court.

With this finding taken as conclusive, the evidence is that, on the eighteenth day of July, 1917, appellant, while then having possession of the note and mortgage as security for an indebtedness of Gore to appellant, voluntarily delivered them to Gore, indorsed in blank by Gore, the payee thereof, with nothing appearing upon either document to indicate that appellant, or anyone other than Gore, had any interest in them; that appellant permitted the note and mortgage to remain in the possession of Gore without recordation of its assignment or notice to the mortgagors until some six months after its execution; that the loan of respondent to Gore was made in good faith, for a valuable consideration, and without notice or knowledge that anyone

other than Gore claimed any interest in the note and mortgage; and that the loan would not have been made by respondent if appellant had not permitted Gore to assume possession of the documents free from any notice of adverse claims.

Upon this showing it is argued that appellant was negligent in failing to record its assignment prior to the transfer to respondent, in failing to give notice to the mortgagors, and in delivering the documents to Gore without some notation thereon showing its claim. From this it is argued that, as respondent was an innocent purchaser for value and without notice, appellant is estopped by its own negligence from asserting its claim, or that, the loss having occurred through appellant's negligence, it must be the one to suffer.

[2] As between two innocent parties who have both suffered from the fraud of a third the loss must fall where the course of business has placed it, if no fault or negligence is imputable to either party. But where the fault or negligence of either has furnished the means whereby the third party has perpetrated the fraud and occasioned the loss, equity demands that the loss must be borne by the one who by his conduct has rendered the injury possible. (10 R. C. L., p. 695.) This is in effect a restatement of the well-known maxim of jurisprudence found in section 3543 of our Civil Code that "where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer."

[3] The doctrine so expressed is often referred to as estoppel by negligence, which is not strictly correct because some of the essential elements of estoppel are lacking in ordinary negligence. But it makes little difference by what term the rule is designated. If the facts found are sufficient to bring the conclusion of law within the rule the judgment must be affirmed. Here the findings of fact amply support the conclusion that respondent was the innocent party and that the loss occurred through the negligence of appellant. The note and mortgage were made payable to Gore and bore every evidence of title and transferability in him. Respondent made inquiry of the mortgagors to ascertain if they had any equitable defenses against the apparent liability and ascertained that they had none. This was all that prudence in the ordinary course of business required. If appellant

had recorded its assignment or had given notice thereof to the mortgagors, its rights could have been protected. "The policy of the law is against upholding secret liens and charges to the injury of innocent subsequent purchasers and encumbrancers." (*Smitton* v. *McCullough,* 182 Cal. 530, [189 Pac. 686].)   **[4]**   But appellant argues that the equities are equal because respondent also was negligent. The only negligence ascribed to respondent in the briefs is its failure to record its assignment prior to recordation by appellant. But negligence without injury is of no avail to appellant. Upon its theory of the case, if respondent had so recorded its assignment, appellant would have been without any remedy whatsoever, while the failure to record did not injure appellant.

The facts of the case differ materially from those in *Chase* v. *Whitmore,* 68 Cal. 545, [9 Pac. 942]; *Kohn* v. *Sacramento Elec. Gas etc. Co.,* 168 Cal. 1, [141 Pac. 626]; and *Crocker Nat. Bank* v. *Byrne & McDonnell,* 178 Cal. 329, [173 Pac. 752]; because in each one of those cases the securities were taken from the true owner by fraud or theft, whereas in the case at bar the note and mortgage were assigned to appellant as security for the payment of another independent debt and the pledgee voluntarily released its security to the pledgor without fraud on the part of anyone acting for the pledgee. Furthermore, as Gore was the payee of the note, he was, so long as it remained in his possession at least, the apparent if not the true owner. Under such circumstances respondent was not required to make inquiry of all the world to see if others had some prior claim.

There remains for consideration the question of the effect of the recordation acts upon the rights of the parties. Appellant contends that respondent's assignment must be held void because under section 1215 of the Civil Code an assignment of a mortgage upon real property must be treated as a conveyance within the meaning of section 1214 of the Civil Code, which provides that every such conveyance is void "as against any subsequent purchaser . . . in good faith and for a valuable consideration, whose conveyance is first duly recorded." But assuming that the section includes an assignment of a mortgage, appellant was not a "subsequent purchaser" within the meaning of the section, the purpose of which is to protect the interests of the innocent purchaser

as against the claim of the prior owner who has failed to avail himself of the protection afforded him by the statute of giving notice to the world by the recordation of the conveyance. But even so, these sections of the code were enacted at the same time as section 2934 of the same code, which provides that ''an assignment of a mortgage may be recorded in like manner as a mortgage, and such record operates as notice to all persons subsequently deriving title to the mortgage from the assignor.'' Here again is the evident purpose to make the recordation of the assignment notice to those subsequently deriving title. ''There is no provision as to prior assignees, or that the recordation should have 'like effect' as recordations of grants.'' (*Adler* v. *Sargent,* 109 Cal. 42, 49, [41 Pac. 799].) The effect of the recordation of a grant of real property is fixed by section 1107 of the Civil Code, which favors the one who, in good faith and for a valuable consideration, has acquired title by an instrument that is first duly recorded. There is no express provision in the code to the effect that the recordation of an assignment of a mortgage on real property shall in itself operate to defeat the title of an innocent assignee for .value who took without notice and prior to the recordation. Inasmuch as section 2934 relates specifically to assignments of mortgages and was adopted concurrently with sections 1214 and 1215 of the Civil Code, the effect of recordation of an assignment must be that prescribed therein, namely, notice to those subsequently deriving title. And such must be the rule in view of the decision in the Adler case, which has been accepted as the judicial interpretation of that section. [5] From this it follows as a rule of law that when a mortgage on realty is fraudulently transferred to two innocent assignees under separate assignments prior to recordation or other notice of either assignment, as between the two innocent parties the priority of the transfer and of the recordation or other notice is important only when the equities are equal. But where the assignee second in point of time takes without notice and for a valuable consideration through the negligence of the other and the equities are otherwise equal, he by whose negligence the fraud occurred must be the sufferer.

The judgment is affirmed.

Brittain, J., and Langdon, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 17, 1920, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 19, 1920.

All the Justices concurred except Wilbur, J., and Lennon, J., who were absent.